IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROSANN CASTRO,

        Plaintiff,

v.                                                                                          Case No. 20-2579-JWB

DOT'S PRETZELS, LLC and
PINNACLE STAFFING GROUP KS, LLC,

        Defendants.

**MEMORANDUM AND ORDER**

This case comes before the court on Defendants' motions to dismiss Plaintiff's amended complaint. (Docs. 25, 32.) The motions have been fully briefed and are ripe for decision. (Docs. 28, 29, 33, 34, 35.) Defendants' motions are GRANTED IN PART and DENIED IN PART for the reasons stated herein.

**I.  Facts**

This is an employment discrimination action brought by Plaintiff Rosann Castro against Defendant Dot's Pretzels, LLC ("DP") and Defendant Pinnacle Staffing Group KS, LLC ("Pinnacle"). The facts stated herein are taken from Plaintiff's amended complaint. (Doc. 26.)

At some point in 2019, Plaintiff, a 59-year old female, applied for employment with Pinnacle in Johnson County, Kansas. Pinnacle supplies DP with workers on a temporary basis. The temporary employee was to put in 300 hours at DP. At or before the completion of those 300 hours, DP would determine whether or not to extend an offer of direct employment to the temporary employee. When applying for employment with Pinnacle, Plaintiff requested placement at DP, in part because her daughter Christina was an employee of DP. This information

1

was relayed to DP by Pinnacle and Plaintiff was hired without an interview by DP. Plaintiff's first day of employment with both Defendants was on December 23, 2019. On that date, she reported for work at DP as a warehouse associate. According to Plaintiff's allegations, she reported to DP regarding her attendance and her work while Pinnacle coordinated her payment and other benefits. (*Id.* ¶¶ 8-9.)

When reporting to work at DP, Plaintiff noticed that almost all of the employees were young. Plaintiff was only one of two warehouse associates over the age of 40. Plaintiff informed both Defendants that she had postcholecystectomy syndrome ("PCS") due to a previous gallbladder removal. Due to Plaintiff's PCS, she needs to use the restroom immediately in certain circumstances. After informing Defendants about her condition, she was told that she would be able to use the restroom as needed as an accommodation for her medical condition. (*Id.* ¶ 33.)

During her employment at DP, Plaintiff was supervised by Jonathon. Jonathon was critical of Plaintiff's work, regularly telling her to "pick up the pace." (*Id.* ¶ 41.) Although Plaintiff's work output matched her younger co-workers, Jonathon did not criticize their performance. At one point, Jonathon assigned Plaintiff to perform the task of boxing by herself even though this task was typically a three person job. When another employee attempted to assist Plaintiff with this task because he did not believe the assignment was "fair," the employee was yelled at and instructed not to help Plaintiff. (*Id.* ¶ 58.) Jonathon continued giving Plaintiff less favorable job assignments. When Plaintiff questioned why she was being given an assignment to clean the restroom so frequently, Jonathon told Plaintiff that it was "something more your pace." (*Id.* ¶ 67.) On one occasion, Caitlyn (l/n/u) stated that she "would never want an old person working with me - they slow everything down." (*Id.* ¶ 62).

On February 23, 2020, a coworker asked Plaintiff to explain the task of cleaning the restrooms as the coworker was assigned this task. Upon seeing this interaction, Jonathon snapped at the coworker and said "Don't ever talk to Rose, she is easily distracted." (*Id.* ¶ 73.) Later that day, Plaintiff sent a text message to DP's plant manager, Kent Schmidtberger, requesting a meeting to discuss her work environment. In response, Schmidtberger told Plaintiff that she needed to talk to Jonathon first. Plaintiff explained that her problems were with Jonathon. Schmidtberger then set a meeting for February 28. The meeting was never held.

During the week of March 2, Plaintiff realized that she had accumulated the 300 hours required to receive a job offer from DP. Plaintiff attempted to discuss this with Schmidtberger who informed Plaintiff that Pinnacle would notify Plaintiff once she had accumulated the 300 hours. Plaintiff then contacted Pinnacle and was told that it was DP's obligation to notify Pinnacle upon an employee reaching 300 hours. (*Id.* ¶ 90.) Pinnacle also told Plaintiff that she may just transition over to a permanent employee without receiving an offer.

The next week Plaintiff was working with Caitlyn at DP when she needed to use the restroom. Plaintiff told Caitlyn about her need to take a break. Caitlyn informed Plaintiff that she could not take a break as it was not a scheduled break time. Plaintiff told Caitlyn about her medical condition and that she was allowed to use the restroom when she needed to, even outside of a regular break. In response, Caitlyn told Plaintiff that it sounded like Plaintiff was "sick" and that she had to clock out and go home sick. (*Id.* ¶¶ 102-05.)

On March 15, Plaintiff was assigned a cleaning task involving hot water and chemicals. Plaintiff received instruction on this task from another co-worker. Plaintiff was told that she only needed to wear gloves if she "didn't like hot water." (*Id.* ¶ 109.) The co-worker who was training Plaintiff did not tell her that the cleaning chemical she was going to use was corrosive to the skin

3

or dangerous. Because Plaintiff was not sensitive to hot water, she did not wear gloves. After finishing the task, Plaintiff's hand was red and slightly swollen. Later, Plaintiff showed Jonathon her hand and reiterated the instructions she had received from the trainer. Plaintiff told Jonathon that she would continue working. The next morning, Plaintiff's hand was extremely swollen. Plaintiff went to the emergency room and was told that she needed to notify her employer because it was a work injury. Plaintiff notified Pinnacle about the injury. Plaintiff was then placed on work restrictions for the week. On March 17, Plaintiff's daughter Christina told Plaintiff that DP removed Plaintiff from the following week's schedule as well. Christina also told Plaintiff that Casey, the day supervisor, stated that Plaintiff had been discharged due to attendance and "Covid." (*Id.* ¶ 129.) Plaintiff did not receive notification of her discharge from DP or Pinnacle. Plaintiff called Schmidtberger who informed Plaintiff that she was discharged because she worked over 300 hours and had "too many absences." (*Id.* ¶ 132.) Plaintiff told him that she only had three absences, which was the number of absences allowed, and that her last absence was because Caitlyn sent her home even though she was able to finish her shift. In response, Schmidtberger stated "Well, that last one didn't even matter because we decided to let you go two weeks ago." (*Id.* ¶ 136.)

Plaintiff then applied for new assignments through Pinnacle. Pinnacle told Plaintiff that jobs were limited due to COVID-19. On June 17, 2020, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") and the Kansas Human Rights Commission ("KHRC") alleging that DP engaged in discriminatory conduct. (*Id.* ¶ 141.) Plaintiff then continued to contact Pinnacle regarding positions. Plaintiff was told by Pinnacle that it did not believe it would have any jobs for Plaintiff in the future. Pinnacle, however, continued to have many assignments available for other workers. On July 23, 2020, Plaintiff filed a charge of

4

discrimination with the EEOC and KHRC alleging that Pinnacle engaged in discriminatory conduct. Plaintiff received her right to sue letters on September 2, 2020. Plaintiff filed this action on November 16, 2020. (Doc. 1.)

In her amended complaint, Plaintiff has alleged four causes of action: retaliation in violation of public policy against Pinnacle (count I); age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, against Defendants (count II); discrimination in violation of the Americans with Disabilities Act ("ADA") against Defendants (count III); and retaliation in violation of the ADA against Defendants (count IV). (Doc. 26.)

Defendants have both moved to dismiss Plaintiff's claims. (Docs. 25, 32.)

## II. Standard

In order to withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

## III. Analysis

### A. Retaliatory Discharge against Pinnacle

In her first claim, Plaintiff alleges that Pinnacle retaliated against her by failing to place her in a position because Plaintiff exercised her rights under the Kansas Worker's Compensation

Act. Pinnacle argues that this claim is subject to dismissal because she has not plausibly stated a claim.

Generally, employment is at-will in Kansas and employers may terminate an employee for any reason. *Hill v. State*, 310 Kan. 490, 500, 448 P.3d 457 (2019). There are exceptions, however, including a prohibition on retaliation for filing a worker's compensation claim. *Id.* at 501. To establish a claim of retaliation, Plaintiff must establish that (1) she "filed a claim for workers' compensation benefits or sustained an injury for which he might assert a future claim for such benefits;" (2) Pinnacle had knowledge of the claim or injury; (3) Pinnacle discharged or demoted Plaintiff; and (4) a "causal connection exists between the protected activity or injury and the discharge or demotion." *Velazquez v. Tyson Fresh Meats, Inc.*, No. 06-2300-JWL, 2007 WL 2994068, at *10 (D. Kan. Oct. 12, 2007); *Brigham v. Dillon Cos., Inc.*, 262 Kan. 12 (1997) (extending workers' compensation public policy exception to include retaliatory demotion). Although this claim is subject to a *McDonnell-Douglas* burden shifting analysis, that analysis is not done at the dismissal stage. *See Morman v. Campbell Cty. Mem'l Hosp.*, 632 F. App'x 927, 933 (10th Cir. 2015) ("the standards for employment discrimination set forth in *McDonnell Douglas* simply do not 'apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss.'") (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

Here, Pinnacle argues that Plaintiff has not alleged that it discharged or terminated Plaintiff but that Pinnacle could not find Plaintiff a position due to COVID-19. (Doc. 33 at 5-6.) Although not clear, it appears that Pinnacle is arguing that Plaintiff has failed to plausibly allege facts supporting an inference of retaliation.[1] The court disagrees. The allegations in Plaintiff's amended

---

[1] To the extent Pinnacle is saying that Plaintiff has not alleged an adverse employment action, this argument lacks merit. Plaintiff has alleged that she was employed by Pinnacle, placed at DP, and when her placement at DP ended, Pinnacle did not place her in a new job. Therefore, this is sufficient to support an adverse action as these allegations support an inference that her employment ended at Pinnacle.

complaint plausibly set forth a claim of retaliation in violation of public policy. Plaintiff was injured while employed by Pinnacle and DP. *See Lounds v. Spherion Staffing LLC*, No. 11-1144-CM-KGS, 2011 WL 6013472, at *2 (D. Kan. Dec. 2, 2011) (discussing sufficiency of allegations to establish joint employer relationship). Plaintiff notified Pinnacle of the injury. Plaintiff was placed on leave and terminated by DP. After that termination, Plaintiff continued to seek other assignments with Pinnacle but Pinnacle did not place Plaintiff in any other position. Although Pinnacle cited to COVID-19 as the reason, Plaintiff alleges that other assignments were available for employees. Plaintiff further alleges that Pinnacle failed to place her in a position because she exercised her rights under the Worker's Compensation Act. (Doc. 26 ¶ 152.) Due to the temporal proximity between the protected activity and Pinnacle's refusal to place Plaintiff at a different job site, Plaintiff has sufficiently alleged causation at the pleading stage. *See Meiners v. Univ. of Kansas*, 359 F.3d 1222, 1231 (10th Cir. 2004). The court finds that Plaintiff has plausibly stated a claim of retaliatory discharge.

  **B. ADEA Discrimination Claim**

Plaintiff has alleged a claim of age discrimination including hostile work environment against both Defendants. To state a claim of age discrimination, Plaintiff must show: 1) she is a member of the class protected by the ADEA; 2) she suffered an adverse employment action; 3) the challenged action occurred under circumstances giving rise to an inference of discrimination. *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015) (citing *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007)). Furthermore, under the ADEA, age must be the "but-for" cause of the adverse treatment at issue. *See Babb v. Wilkie*, 140 S. Ct. 1168, 1174 (2020) ("What follows instead is that, under [29 U.S.C. § 633a, which governs federal employment], age must be the but-for cause of *differential treatment*, not that age must be a but-

7

for cause of the ultimate decision.") (emphasis in original).  Age discrimination can also form the basis of a hostile work environment claim if "(1) the employee was discriminated against because of her age; and (2) the discrimination created a workplace so permeated with severe or pervasive intimidation, ridicule, and insult, that it altered the employment conditions and created an abusive working environment."  *Howell v. New Mexico Dep't of Aging & Long Term Servs.*, 398 F. App'x 355, 359 (10th Cir. 2010) (citing *MacKenzie v. City & Cnty. Of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005)).

<u>Claim against DP</u>.  In support of its motion to dismiss, DP essentially argues that Plaintiff has not alleged sufficient facts to support that the challenged action occurred under circumstances giving rise to an inference of discrimination.  Reviewing the amended complaint, Plaintiff has alleged that the adverse actions taken against her included assigning her undesirable tasks with more frequency than younger coworkers, assigning Plaintiff tasks to work alone when those tasks required multiple employees, refusing to hire Plaintiff permanently, discharging Plaintiff, and subjecting her to a hostile work environment.

In its initial memorandum, DP argues that Plaintiff's claim is subject to dismissal because Plaintiff has not alleged any facts regarding the names, ages, job duties, or qualifications regarding the younger workers that were treated more favorably.  DP, however, fails to cite any Tenth Circuit authority that requires this factual detail at the pleading stage.  Plaintiff's allegations state that there was only one other co-worker as a warehouse associate over the age of 40 and that nearly all of the employers were under 40.  Plaintiff further alleged that she was criticized about her work by her supervisor even though her pace matched that of the younger workers.  Plaintiff was assigned undesirable tasks frequently because it was more her "pace."  Plaintiff was also given

8

difficult tasks that were usually done by more than one employee. At this stage, this is sufficient to state a claim of age discrimination.

DP also argues that the court should not infer age discrimination because her hiring and firing was in a short time span. In support, DP cites to *Ade v. Conklin Cars Salina, LLC*, 800 F. App'x. 646, 651 (10th Cir. 2020). In that case, the Tenth Circuit held that "[w]here an employee was hired and discharged by the same person within a relatively short time span, 'there is a strong inference that the employer's stated reason for acting against the employee is not pretextual.'" *Id*. First, the court notes that the court of appeals found this fact significant when determining pretext in the context of summary judgment and not in deciding whether the plaintiff stated a plausible claim. Moreover, Plaintiff alleges that she was hired by Pinnacle and never interviewed by any individual at DP. Therefore, *Ade* is not applicable here.

DP raises additional arguments in its reply brief regarding the sufficiency of Plaintiff's allegations. The court does not consider arguments raised for the first time in a reply brief. *Lynch v. Barrett*, 703 F.3d 1153, 1160 n.2 (10th Cir. 2013). The court finds that Plaintiff has sufficiently stated a claim of age discrimination under the ADEA against DP. Although DP moved to dismiss Plaintiff's ADEA claim which includes a claim of hostile work environment, DP does not specifically address the hostile work environment component. Here, the court has determined Plaintiff has plausibly alleged age discrimination against DP. Therefore, the court declines to consider the sufficiency of the hostile work environment claim as DP has not raised this argument.

<u>Claim against Pinnacle</u>. Plaintiff alleges age discrimination against Pinnacle as well. According to Plaintiff's allegations, Pinnacle took adverse action against her when it refused to place Plaintiff in other employment. Pinnacle argues that there are no allegations which support a finding that this action was because of Plaintiff's age. In response, Plaintiff argues that she has

9

alleged sufficient facts, including that she was younger than other employees at DP's facility, DP terminated her, and then Pinnacle failed to give her another assignment even though it gave assignments to other employees. (Doc. 34 at 13.) The only allegations directly related to Pinnacle, however, are that Plaintiff was over the age of 40 and Pinnacle failed to place her in a position after her discharge from employment. Although Plaintiff alleges that other employees got assignments, Plaintiff makes no effort to allege any facts regarding these other employees or the positions that she applied for. Therefore, the mere fact that other employees got assignments does not give rise to an inference of age discrimination.

Plaintiff also cites to her factual allegations pertaining to her treatment while working at DP. (*Id.*) Plaintiff has further alleged that Pinnacle had actual knowledge of the discriminatory conduct and failed to "take prompt remedial action to correct and prevent such behavior." (Doc. 26 ¶ 163.) Plaintiff has also alleged that she was employed by both Pinnacle and DP and that both Defendants had control over certain terms and conditions of the employment. (*Id.* ¶¶ 8-9.) These allegations could support a finding that Pinnacle and DP are joint employers and Defendants do not dispute these allegations in their motions. *See Knitter v. Corvias Mil. Living, LLC*, 758 F.3d 1214, 1226 (10th Cir. 2014) (discussing that "two entities are joint employers if the share or co-determine those matters governing the essential terms and conditions of employment.") While there is no vicarious liability for joint employers, there are circumstances under which a joint employer may be liable for discriminatory conduct by the co-employer. *See Byorick v. CAS, Inc.*, 114 F. Supp. 3d 1123, 1126–27 (D. Colo. 2015) (discussing that there is no vicarious liability for joint employers) (citing *Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 812 (7th Cir. 2014) ("Here, nothing in the record suggests that the County participated in the alleged discriminatory conduct or failed to take corrective measures within its control."); *Torres–Negron v. Merck & Co., Inc.*,

488 F.3d 34, 40 n. 6 (1st Cir. 2007) ("[J]oint-employer liability does not by itself implicate vicarious liability....Thus, a finding that two companies are an employee's 'joint employers' only affects each employer's liability to the employee for their own actions, not for each other's actions.").

The EEOC has issued guidance in the application of discrimination laws to temporary workers placed by staffing agencies. "The guidance makes clear that a staffing firm must hire and make job assignments in a non-discriminatory manner. It also makes clear that the client must treat the staffing firm worker assigned to it in a non-discriminatory manner, and that the staffing firm must take immediate and appropriate corrective action if it learns that the client has discriminated against one of the staffing firm workers." EEOC, No. 915.002, *Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms*, 1997 WL 33159161, at *1. The following is instructive here:

> If a client discriminates against a worker assigned [to it] by a staffing firm, who is liable?
>
> The [staffing] firm is liable if it participates in the client's discrimination. For example, if the firm honors its client's request to remove a worker from a job assignment for a discriminatory reason and replace him or her with an individual outside the worker's protected class, the firm is liable for the discriminatory discharge. The firm also is liable if it knew or should have known about the client's discrimination and failed to undertake prompt corrective measures within its control.

*Id.* at *10, 11.

Here, while Plaintiff has alleged that Pinnacle had actual knowledge of this discriminatory conduct and failed to take action, Plaintiff's amended complaint lacks any facts that would support such a finding. Plaintiff has not alleged that she told anyone at Pinnacle about the workplace hostility that she attributes to her age or her differential treatment while employed at DP. Plaintiff's threadbare recitals of the requirements for liability, which are only supported by

11

conclusory statements, are not sufficient to state a claim. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663, (2009)).

Although Pinnacle does not expressly address the hostile work component of Plaintiff's age discrimination claim, Pinnacle does move for dismissal of the entire claim based on the failure to plausibly allege age discrimination. (Doc. 33 at 7-10.) As stated herein, age discrimination can form the basis of a hostile work environment claim. However, a plaintiff must show that she was discriminated against on the basis of age. *See Howell*, 398 F. App'x at 359. The court has determined that Plaintiff has not plausibly alleged any facts that would support a finding that Pinnacle engaged in discriminatory conduct on the basis of Plaintiff's age.

Therefore, Pinnacle's motion to dismiss Plaintiff's claim of age discrimination is granted.

### C. ADA Discrimination Claim

Plaintiff has also brought a claim of disability discrimination against both Defendants. Plaintiff alleges she is disabled, that both Defendants took adverse actions against her, and that the motivating factor for those actions was Plaintiff's disability. Both Defendants move for dismissal on the basis that she has failed to state a claim.

Claim against DP. DP moves for dismissal on the basis that Plaintiff has failed to plausibly allege that she is disabled. To state a claim under the ADA[2], Plaintiff must prove the following: 1) she is disabled; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of her job; and (3) she was discriminated against because of her disability. *Adair v. City of Muskogee*, 823 F.3d 1297, 1304 (10th Cir. 2016). Under the ADA, disability "means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or

---

[2] The ADA was amended by the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553 (codified at 42 U.S.C. § 12101 *et seq*.).

(C) being regarded as having such an impairment...." 42 U.S.C. § 12102(1). Plaintiff has alleged both that she has a physical impairment and that she was regarded as having an impairment. (Doc. 26 ¶¶ 173-74.)

With respect to her impairment, DP argues that she has not sufficiently alleged that she is disabled because her alleged impairment, PCS, which causes the need to use the bathroom urgently, does not substantially limit a major life activity. In her amended complaint, Plaintiff has alleged that her physical impairment limits Plaintiff "from life activities, including the ability to maintain employment and the ability to work for extended periods of time without a short restroom break." (Doc. 26 ¶ 173.) In DP's motion to dismiss, DP argues that Plaintiff has not sufficiently alleged that her impairment substantially limits a major life activity in that Plaintiff has not shown that there is a significant restriction in the ability to perform a class of jobs as compared to the general public. In response, Plaintiff appears to abandon her allegation that her impairment significantly impacts the major life activity of working as she does not address how her allegations would support such an inference. Rather, Plaintiff asserts that her allegations support an inference that her physical impairment substantially limits the major life activity of the operation of her bowel and bladder. (Doc. 28 at 12-13.) The ADA provides that "a major life activity also includes the operation of a major bodily function, including...functions of the ...bowel [and] bladder." 42 U.S.C. § 12102(2)(B).

DP argues that the court should not consider this argument because Plaintiff's amended complaint does not identify bowel and/or bladder functions as major life activities. (Doc. 29 at 8.) The Tenth Circuit, however, has instructed that a plaintiff is "not required to provide a precise description of the major life activity allegedly affected by her disability" at the pleading stage.

13

*Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 832, n. 5 (10th Cir. 2011).  Therefore, the court will consider whether the allegations support such an inference.

DP argues that Plaintiff has failed to allege any facts to support a finding that her PCS impacts her in a way "that causes her to be any different than a member of the general public in regards to their need to use the restroom."  (Docs. 25 at 11; 29 at 8.)  In determining whether Plaintiff's impairment substantially limits a major life activity, the court is to consider the following factors: "1) the nature and severity of the impairment; 2) the duration or expected duration of the impairment; and 3) the permanent or long term impact or the expected permanent or long term impact of or resulting from the impairment."  *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1145 (10th Cir. 2011) (quoting *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1130 (10th Cir. 2003)).

Here, the only allegation pertaining to her impairment is that her PCS results in her "needing to use the restroom immediately upon the onset of the urge to relieve herself."  (Doc. 26 ¶ 31.)  As pointed out by DP, these allegations do not support a finding that Plaintiff needs to use the restroom more frequently than the general public.  While an impairment affecting the bowel or bladder functions could constitute a disability, Plaintiff's allegations here are not sufficient.  Plaintiff points to *Zako v. Encompass Digital Media, Inc.*, No. 3:19-cv-844, 2020 WL 3542323 (D. Conn. June 30, 2020), in support of her argument.  (Doc. 28 at 13.)  In *Zako*, the court found that the plaintiff's allegations were sufficient to plausibly allege a disability.  Notably, the plaintiff alleged that his condition "required frequent urination" and, if unable to frequently urinate, he starts bleeding from his lower urinary tract.  *Zako*, 2020 WL 3542323, at *8.  The plaintiff in *Zako* further alleged that when he was required to hold in his need to urinate, he was in physical pain.  *Id.*  The court found that these allegations were sufficient.  In doing so, the court distinguished the

14

case of *Fasan v. McRoberts Protective Agency Inc.*, No. 13-CV-4658 RRM LB, 2015 WL 1285909, at *4 (E.D.N.Y. Mar. 20, 2015), in which the plaintiff "d[id] not allege that his diabetes and his frequent urination condition constitute[d]" a limitation of a major life activity as compared to most people in the general population. *Zako*, 2020 WL 3542323, at *8.

Here, Plaintiff fails to identify how her allegations support a finding that her impairment substantially limits a major life activity. Therefore, Plaintiff's ADA discrimination claim based on her having a physical impairment fails to plausibly state a claim.

Alternatively, however, Plaintiff has also brought a discrimination claim based on a perceived impairment. (Doc. 26 at ¶174.) To allege that her "employer regarded [her] as having an impairment," a plaintiff must assert that "(1) [s]he has an actual or perceived impairment, (2) that impairment is neither transitory nor minor, and (3) the employer was aware of and therefore perceived the impairment at the time of the alleged discriminatory action." *Adair*, 823 F.3d at 1300, 1306. A plaintiff alleging a claim of a perceived disability "no longer needs to plead and prove that the actual or perceived impairment substantially limited one or more major life activities." *Id.* at 1306 (citations and internal quotation marks omitted).

In DP's initial memorandum in support of its motion to dismiss, DP does not address the "regarded as" claim. DP, however, does raise this issue in its reply brief. (Doc. 29 at 10-11.) As set forth above, the court does not address arguments raised for the first time in a reply brief. Therefore, the court declines to address the sufficiency of this claim as DP did not adequately raise this issue in its initial brief.

Therefore, DP's motion to dismiss Plaintiff's claim of disability discrimination based on a perceived disability is denied. Plaintiff's claim of discrimination based on an actual disability is dismissed.

Claim against Pinnacle.  Pinnacle raises the same arguments raised by DP with respect to Plaintiff's claim of disability discrimination based on an actual disability.  For the same reasons set forth above, Pinnacle's motion is granted as to this claim.

With respect to Plaintiff's claim of disability discrimination based on a perceived disability, Pinnacle also failed to address this claim in its initial memorandum.  Therefore, the court declines to consider any argument raised for the first time in Pinnacle's reply brief.

### D.     ADA Retaliation Claim

Finally, Plaintiff also brings a claim of retaliation in violation of the ADA against both Defendants.  To establish a prima facie case for retaliation under the ADA, Plaintiff must show: (1) she engaged in a protected activity; (2) a reasonable employee would have found Defendants' conduct materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action.  *Blakely v. Cessna Aircraft Co.*, 256 F. Supp. 3d 1169, 1174 (D. Kan. 2017).  Here, Plaintiff alleges that the protected activity was requesting and utilizing reasonable accommodations.  (Doc. 26 ¶ 185.)  Therefore, in addition to showing she engaged in protected activity, Plaintiff must also show that she had a "reasonable, good faith belief that [s]he was entitled to an accommodation."  *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1187 (10th Cir. 2016).  Requests for accommodation can constitute protected activity; however, such requests must be "sufficiently direct and specific, giving notice that [the employee] needs a special accommodation."  *Id.* at 1188 (quoting *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 23 (1st Cir. 2004) (brackets in original).  Plaintiff "must make clear that [she] wants assistance for [] her disability."  *Id.* (citation omitted).

Claim against DP.  DP moves for dismissal of the retaliation claim on the basis that Plaintiff has not sufficiently alleged that she had a good faith belief that she was disabled.  In support, DP

16

makes the same arguments it made with respect to Plaintiff's disability discrimination claim. Essentially, DP argues that Plaintiff's need to use the restroom urgently is not sufficient to establish that she is disabled. Here, however, Plaintiff need only have a good faith belief that she is disabled and entitled to an accommodation. This is not the same standard.

In support of its motion, DP cites to *Isley v. Aker Philadelphia Shipyard, Inc.*, 191 F. Supp. 3d 466 (E.D. Pa. 2016) and *Tyson v. Access Servs.*, 158 F. Supp. 3d 309, 316 (E.D. Pa. 2016). Those cases are not persuasive here. In *Isley*, the court was considering a motion for summary judgment. 191 F. Supp. 3d at 468. Therefore, the court was not evaluating the sufficiency of a complaint.[3] In *Tyson*, the court held that Plaintiff's allegations of protected activity were not sufficient to state a claim because a plaintiff "cannot reasonably believe her disagreements with her employer over the level of care being provided to some patients, and the expenditures of resources therefore, constitute a violation of the ADA." 158 F. Supp. 3d at 316. Here, by requesting accommodation and being denied the same, Plaintiff has plausibly alleged that she engaged in activity protected by the ADA. See *Foster*, 830 F.3d at 1188. Moreover, although the court previously determined that her allegations were not sufficient to plausibly allege that she suffered from an actual disability, a retaliation claim does not require an actual disability. *Id.* at 1186. It only requires a good faith belief that she should be provided an accommodation under the ADA. This is met here. Plaintiff has alleged that she explained her medical condition to Defendants and that she was then told "she would always be able to use the restroom as needed as an accommodation for the medical condition." (Doc. 26 ¶ 33.) According to Plaintiff's allegations, Defendants did not question the need for an accommodation. The court finds that Plaintiff's allegations are sufficient to show that she had a good faith belief that she was entitled

---

[3] Notably, DP urges the court to disregard Plaintiff's authority that is based on decisions rendered on summary judgment. (Doc. 29 at 2, n. 1.)

to an accommodation under the ADA and that DP's conduct violated the ADA by refusing her accommodation and then terminating her based on her absences.

Therefore, DP's motion to dismiss Plaintiff's ADA retaliation claim is denied.

<u>Claim against Pinnacle</u>.  Plaintiff has also alleged an ADA retaliation claim against Pinnacle.  Pinnacle argues that this claim is subject to dismissal for the same reason asserted by DP and because Plaintiff has not plausibly alleged that Pinnacle's reason for not providing Plaintiff another position was false or pretext for retaliation.  (Doc. 33 at 14-15.)  Pinnacle's argument regarding Plaintiff's good faith belief that she suffers from a disability is not persuasive for the reasons discussed above.[4]  With respect to the argument regarding Pinnacle's stated reason for denying Plaintiff a different position, Pinnacle has not shown that Plaintiff must establish that this reason is false or pretext at this stage of the proceeding.  Rather, Plaintiff need only plausibly state a claim of discrimination at this stage.  *See Morman*, 632 F. App'x at 933.

Pinnacle's motion to dismiss this claim is therefore denied.

**IV.    Conclusion**

Defendants' motions to dismiss (Docs. 25, 32) are GRANTED IN PART and DENIED IN PART.  Defendants' motions are GRANTED with respect to Plaintiff's claim of ADA discrimination based on an actual disability.  Pinnacle's motion is GRANTED with respect to Plaintiff's claim of ADEA discrimination.  Defendants' motions are DENIED with respect to all remaining claims.

IT IS SO ORDERED.  Dated this 19th day of August, 2021.

__s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE

---

[4] Pinnacle's argument in support of its position relies on the same authority as cited by DP.  (*See* Doc. 33 at 15.)